UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD KRAFT,

        Plaintiff,

                              Case Number 08-10350-BC
v.                                Honorable Thomas L. Ludington

DR. LEONARD'S HEALTHCARE
CORPORATION, PPR DIRECT, and
MMC ENTERPRISES CORPORATION,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT PPR DIRECT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART DEFENDANT DR. LEONARD'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME, AND ORDERING PLAINTIFF TO SHOW CAUSE WHY THE COMPLAINT SHOULD NOT BE DISMISSED WITH RESPECT TO MMC ENTERPRISES**

On January 24, 2008, Plaintiff Ronald Kraft ("Plaintiff") filed a complaint alleging injuries when he slipped and fell on a "no-slip ice carpet" ("the carpet" or "the product"). Plaintiff brings claims for breach of express warranty, breach of implied warranty of fitness for a particular purpose, and negligence against Defendants Dr. Leonard's Healthcare Corporation ("DLHC"), PPR Direct ("PPR"), and MMC Enterprises Corporation ("MMC," collectively "Defendants"). DLHC, PPR, and Plaintiff each moved for summary judgment. Dkt. # 34, 46, 51. MMC, on the other hand, has not been served and counsel has not appeared on its behalf. *See* dkt. # 15.

Plaintiff believes it is entitled to summary judgment with respect to the express warranty claim because Defendants included express warranties in a catalogue and in the packaging of the carpet itself. On the contrary, DLHC and PPR each assert that they are entitled to summary judgment because they did not manufacture the carpet. Both Defendant's contend that for Plaintiff

to hold a non-manufacturing distributor liable for his injuries he must demonstrate that Defendants breached an express warranty or that Defendants knew or should have known the carpet was defective. *See* Mich. Comp. Laws § 600.2947(6).

For the reasons stated below, the Court will **GRANT** PPR's motion for summary judgment, **GRANT** in part and **DENY** in part DLHC's motion for summary judgment, and **DENY** Plaintiff's motion for summary judgment.

I

In January of 2006, Plaintiff's wife purchased the carpet from a mail-order catalogue to provide traction while walking over snow or ice. The carpet is a ten foot by eighteen inch outdoor rug made of a coarse material, which is designed to be placed over snow and ice to provide traction for pedestrian traffic. On January 25, 2006, Plaintiff slipped the first time he used the carpet to traverse across ice-covered ground. Plaintiff had placed the product on a walkway covered by ice and snow leading from Plaintiff's garage. It was also partially resting on Plaintiff's snow-covered lawn. Dkt. # 34-2 at 4. As a result of the fall, Plaintiff fractured his wrist and injured his hand.

Plaintiff's wife ordered the product from a "Carol Wright Gifts" catalogue, which specializes in various healthcare related products. The catalogue contained the following text:

> *Get a grip and prevent falls for good!*
> **NO-SLIP ICE CARPET**
> Just place over ice or snow – and away you go! Get out of the house without shoveling, salting or scraping! Rugged coir fibers grip to ice, snow and your shoes! Just place on walkway or stairs for improved traction even in the worst conditions. Flexible in sub-freezing temperatures. Use it every winter.

Dkt. # 34-3 at 2. An accompanying drawing displayed the product unfurled down a snow-covered staircase. *Id.* Plaintiff's wife, Theresa Kraft, relied on the representations contained in the advertisement and ordered the product. Dkt. # 44-4 at 2. Plaintiff also read the advertisement before

-2-

using the product. *Id.* at 3

The product arrived with instructions, which provided as follows:

### Ice Carpet with Built-in-traction

The Ice Carpet prevents slips, skids and tumble on your entrance walk and sidewalk. Even on thick accumulations of ice and snow, just lay down the ice carpet for improved traction. With proper care it can be used year after year. Helps provide surefootedness, no matter what the weather. No installation is necessary. Stays where you place it. For a longer or wider walk-two or more can be placed together. When walking on ice, it is a good idea to observe your next step and caution should be taken. Brush any accumulation off the ice carpet with a broom. Store in a dry place.

Made in China

Dkt. # 34-5. The product was not accompanied by any other documents. Dkt. # 34-2 at 4.

According to PPR, MMC purchased the carpet from an unknown manufacturer, sold it to PPR. In turn, PPR sold the carpet to DLHC. DLHC sold the product to Plaintiff through DLHC's "Carol Wright Gifts" catalogue. Plaintiff asserts that PPR should be considered a manufacturer, contending that the Chinese manufacturer produces the carpet at PPR's behest. Dkt. # 54 at 9-10. PPR's manager, Margaret Hickey ("PPR's Manager"), acknowledged that an American company formerly manufactured the carpet, but ceased production. Dkt. # 54-8 at 2. PPR solicited an importer to locate a Chinese company to continue production and supplied it with a sample of the carpet. *Id.*; dkt. # 54-9 at 2.

PPR denies that the carpet was defective or any knowledge that it was defective. Plaintiff, on the other hand, contends that PPR had knowledge of a December 9, 2005 incident in which a customer injured himself using the carpet. In support, Plaintiff attached a letter from the injured customer's daughter addressed to PPR's Manager. The letter itself is dated January 20, 2006. It provided as follows:

> I am writing in regards [sic] to my husband [sic] injury.

>   I ordered a nonslip ice mat from Starcrest. On December 9, 2005, my husband was trying to clean off some snow [and] ice by our backdoor. I remembered I had bought this rug for such an occasion. We followed all the directions and put it out. My husband came around the house and stepped on this mat. He went flying as though he was on a sled. He fell and hurt his hip, but went backwards and struck his head. I tried to help and was covered with blood . . . Our son got Dad to the hospital and he had 10 staples put in and had a severe concussion.
>
>   I am enclosing papers from the E.R. room as you had asked me to . . . Thank you for being so nice.

Dkt. # 54-4 at 2-4.

As part of its motion, PPR contends that Plaintiff did not timely disclose a liability expert. The scheduling order required expert witness reports to be disclosed on or before August 1, 2008. Dkt. # 18. On April 22, 2008, Plaintiff's initial disclosure indicated that "Plaintiff has not yet retained a liability expert." Dkt. # 46-7 at 2. On May 30, 2008, Plaintiff indicated in an answer to an interrogatory that "a liability expert will be named." Dkt. # 46-6 at 2.

On September 15, 2008, Plaintiff produced the report of Harold Josephs ("Plaintiff's Expert"), an engineering expert witness, but did not indicate any other experts. Dkt. # 46-8 at 2; dkt. # 47 at 4. Plaintiff's Expert report provided as follows:

1.  COMPLETE STATEMENT OF ALL OPINIONS AND BASIS FOR OPINIONS

    The mat provides insufficient friction to be used on ice as a 'no slip' ice carpet. The basis for this opinion is this incident and those other incidents disclosed by Defendant and my examination of the subject mat.

    There is nothing remarkable in the construction or the materials of the mat that would provide enhanced frictional qualities to deem the mat a 'no slip' ice carpet. This mat is composed of a compressed fibrous material, being eighteen (18) inches with and approximately one-eighth (1/8) inch thick. The thickness of the mat varies and, in some locations, is so thin as to be virtually transparent.

    Statements made in the advertising that I have reviewed are not true. Specifically, this mat cannot be deemed a "no slip" ice mat. Examination of the mat

reveals nothing that would affix the mat to ice or substantially increase the friction necessary to prevent slippage. Often mats made to increase friction on ice are designed with sharp protrusions at the ice interface to minimize mat slip.

2. DATE OR INFORMATION CONSIDERED BY WITNESS

Personal examination of the mat, review of advertising materials for the mat, this incident, and other incidents as provided by Defendant.

Dkt. # 47 at 2-3. The report does not discuss testing or additional substantive opinions relevant to the carpet.

II

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

III

Plaintiff's complaint advances claims for negligence and breach of express and implied

warranties.  PPR and DLHC assert that each is a distributor, not a manufacturer.  Consequently, Plaintiff must satisfy the requirements of Mich. Comp. Laws § 600.2947(6) to hold either liable under Michigan law, which provides the following:

> In a product liability action, a seller other than a manufacturer is not liable for harm allegedly caused by the product unless either of the following is true:
>
> (a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries.
>
> (b) The seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm.

Plaintiff argues that PPR should be considered a manufacturer and is not subject to the requirements of section 600.2947(6).  The Michigan Court of Appeals provided the following analysis of the statute:

> The plain language [section] 600.2947 states that, in cases where a plaintiff brings a product liability action based on harm allegedly caused by a product, the only claims that may lie against a non-manufacturing seller are those based on a failure to exercise reasonable care and those based on breach of an express warranty . . . The clear and unambiguous language of [section] 600.2947 precludes an ordinary manufacturing defect claim against a non-manufacturing seller because such a claim does not involve an allegation that the seller failed to exercise reasonable care or made an express warranty."

*Hastings Mut. Ins. v. Gen. Motors Corp.*, 2005 WL 711767, *3 (Mich. Ct. App. March 29, 2005).

To the extent that the statute applies, Plaintiff contends that it can satisfy either element.

A

Plaintiff contends that PPR should be considered a manufacturer because PPR requested that an importer locate a Chinese manufacturer.  *See* dkt. # 54 at 9-10.  The record also demonstrates that PPR provided a sample to emulate.  Plaintiff has not provided any legal authority addressing the

definition of a manufacturer. Nor does the statute define the term. *See* Mich. Comp. Laws § 600.2945. In the context of Michigan's Bulk Transfers Act, Mich. Comp. Laws § 440.6101 *et seq.*, the Michigan Court of Appeals relied on Black's Law Dictionary to determine the meaning of "manufacture" relevant to that statute. *Tubelite, Inc. v. Lakeshore Glass & Metals, Inc.*, 2000 WL 33529759, *3 (Mich. Ct. App. February 18, 2000) (unreported) It noted that manufacturer was defined as an "entity engaged in producing or assembling new products." *Id.* (citing Black's Law Dictionary (7th ed)). While merely persuasive, this common-sense definition applies here, absent any contrary authority. Plaintiff has not demonstrated more than a tangential connection between PPR and the Chinese manufacturer, nor any evidence that PPR exercises any control or ownership over the Chinese manufacturer. Accordingly, Plaintiff must satisfy the requirements of Mich. Comp. Laws § 600.2947(6) and demonstrate that Defendants were "independently negligent." Torts: Michigan Law and Practice § 8.1 (Linda Miller Atkinson et al. eds., 2000).

B

First and foremost, it is important to note that Plaintiff asserted a breach of implied warranty claim. While section 600.2947(6)(a) apparently limits a products-liability plaintiff to two discrete avenues in an action against a distributor, this is an area of unsettled law. *See generally Coleman v. Maxwell Shoe Co., Inc.*, 475 F. Supp. 2d 685, 689-91 (E.D. Mich. 2007). To succeed under the common law implied warranty theory, a plaintiff is only required to demonstrate a defect and a proximate cause between the defect and the injury. *See, e.g. Siedlik v. Stanley Works, Inc.*, 205 F. Supp. 2d 762, 764 (E.D. Mich. 2002). Section 600.2947(6)(a) adds a requirement that a plaintiff must demonstrate that the defendant did not exercise reasonable care.

Notwithstanding the legislature's adoption of section 600.2947(6), some courts have

concluded that the common law action for breach of implied warranty still exists against non-manufacturers of the product. The Sixth Circuit recently disagreed with this conclusion. *See Croskey v. BMW of North America, Inc.*, 532 F.3d 511, 520 (6th Cir. 2008). The *Croskey* court acknowledged that the statute "added an element of fault to the traditional test for breach of implied warranty" asserted against a non-manufacturer. *Id.* Thus, a plaintiff must demonstrate "that the product was sold in a defective condition, the defect caused his injury, and the seller failed to exercise reasonable care." *Id.*

To demonstrate that a defendant failed to exercise reasonable care, district courts have evaluated whether a plaintiff demonstrated that the defendant knew or should have known of the defect. *Konstantinov v. Findlay Ford Lincoln Mercury*, 2008 WL 243957 *5 (E.D. Mich. January 28, 2008). Plaintiff's pleadings spend little time developing this argument, but it appears Plaintiff reasons that (1) the product was necessarily defective and not fit for its intended use because he slipped while using the product and (2) Defendants should have conducted testing. Plaintiff further contends that the customer letter sent to PPR discussing a similar accident placed Defendant on notice. Additionally, Plaintiff opines that the high number of products sold leads to the assumption that others were injured and that the product was dangerous. Thus, Defendant had a duty to test the product. A majority of Plaintiff's argument is speculation without any legal authority supporting the assertion. Plaintiff has not presented any evidence that DLHC was aware that the product was defective. With respect to PPR, a customer letter dated five days before Plaintiff's accident indicates a similar injury. The letter suggests that PPR was aware of the incident before receipt of the letter. Thus, PPR may have known that the product was potentially defective.

Likewise, Plaintiff has not produced evidence that DLHC knew or should have known that

the product was defective. Thus, Plaintiff has not established that DLHC failed to exercise reasonable care. Mich. Comp. Laws § 600.2947(6)(a).  However, Plaintiff has created a factual dispute that PPR knew that the carpet was potentially defective and did not exercise reasonable care.

The next step in the analysis is to determine whether the product was indeed defective. Plaintiff attempts to show a defect in two manners: (1) Plaintiff's injury necessarily demonstrates defect and (2) the expert opinion of a mechanical engineer.  Plaintiff has not offered any authority that his injury alone establishes a defect under Michigan law.

With respect to the expert opinion[1] that the design of the carpet was defective, it is also insufficient to demonstrate a defect. Michigan utilizes the "risk-utility test" to determine whether a product's design is defective. *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 186 (Mich. 1984). The first step is to assess whether the manufacturer "eliminate[d] any unreasonable risk of foreseeable injury." *Id.* at 185-86.  The burden rests with the plaintiff "of producing evidence of the magnitude of the risk posed by the design, alternatives to the design, or other factors concerning the unreasonableness of a design's risk." *Haberkorn v. Chrysler Corp. (Two Cases)*, 533 N.W.2d 373, 380 (Mich. Ct. App. 1995).

Here, the expert report does not establish a prima facie case of design defect.  Plaintiff's Expert opines that the carpet was negligently designed because it produces "insufficient friction" and should have incorporated "sharp protrusions." The report does not adequately explain how the

---

[1] PPR objects to the expert report because Plaintiff did not disclose the expert by the dates in the scheduling order and provided a report in an untimely fashion such that PPR was precluded from retaining a contrary expert report. Plaintiff contends that it timely produced the expert report to DLHC, but due to clerical error provided the report to PPR approximately a month after the Court's deadline.  While PPR would be prejudiced by the late disclosure, the Court will permit the late disclosure because it's admission is harmless to PPR in light of the Court's conclusions. *See* Fed. R. Civ. P. 37(c)(1).

alternative design is superior or the manner that it materially differs from the design of the carpet. Nor has it provided any foundation for concluding that an alternative design is practical or would not significantly reduce it usefulness or desirability.  *See* Mich. Comp. Laws 600.2946(2). Ultimately, Michigan law employs a "stringent standard" when evaluating a claim of negligent design.  *Fisher v. Kawasaki Heavy Ind., Ltd.*, 854 F.Supp. 467, 471 (E.D. Mich. 1994).  The *Fisher* court summarized the high standard as follows:

> [I]t is incumbent upon a plaintiff to make a showing-via compelling, empirical evidence of an alternative design-that the chosen design was unreasonably dangerous. Such empirical evidence will probably most often take the form of testing, but must objectively show acceptability, utility, feasibility (including cost), and general safety of the proposed alternative design vis-a-vis the allegedly defective design. It is only with the assistance of such evidence on the proposed alternative design that the trier of fact can make a sound determination as to whether or not the product in question was "defectively designed," i.e. whether the manufacturer exercised reasonable care in making the design choices it made.

*Id.*  While Plaintiff's expert asserts that "other mats" employ his suggested alternative design, the report does not identify the other products or even clearly explain the alternative design.  Thus, the three-paragraph opinion proffered by Plaintiff does not meet his prima facie evidentiary burden that the product was defective due to its design.  Thus, Plaintiff can not establish that the product was defective and Defendants are entitled to summary judgment with respect to Plaintiff's claim for breach of implied warranty pursuant to Mich. Comp. Laws 600.2947(6)(a).

C

Next, Plaintiff alleges that Defendants breached an express warranty.  Here, the determinative issue is whether PPR or DLHC made an express warranty. The Uniform Commercial Code, as adopted by Michigan, defines an express warranty as "[a]n affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the

bargain creates an express warranty that the goods shall conform to the affirmation or promise." Mich. Comp. Laws § 440.2313(1)(a).  Moreover, "[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he or she have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Id.* at § 440.2313(2).  Advertisements and promotional literature may form "a part of the basis of the bargain where they are prepared and furnished by a seller to induce purchase of its product and the buyer relies on the representations."  *Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F.Supp. 364, 370 (E.D. Mich. 1977).

Plaintiff contends that PPR made an express warranty when it provided DLHC with a text similar to the language in the catalogue.  The record does not support this assertion because there is no evidence that PPR ever published the description or that Plaintiff was aware of any representation made by PPR.  Thus, PPR is entitled to summary judgment under the express warranty claim or section 600.2947(6)(b) claim.

In contrast, the Carol Wright advertisement may serve as an express warranty. DLHC, which did not respond to Plaintiff's motion for summary judgment, simply asserts there is no evidence that it expressly warranted the product.  It is undisputed, however, that the advertisement includes statements such as "prevent falls for good" and "no slip ice carpet."  Plaintiff's affidavit states that he relied on the advertisement before relying on the product.  Moreover, DLHC has not disputed that the carpet did not conform to that warranty or that Plaintiff injured himself.  Thus, Plaintiff is entitled to summary judgment under the express warranty claim or section 600.2947(b) claim.

D

Plaintiff's complaint alleges a cause of action for negligence. The rationale discussed with respect to the viability of a common law claim for breach of implied warranty against a non-manufacturer applies equally. In other words, Mich. Comp. Laws § 600.2947 precludes Plaintiff from recovering from Defendants, as distributors, under a legal theory not provided for in the statute. Defendants are entitled to summary judgment of Plaintiff's negligence claim.

E

Plaintiff alleges the same causes of action against MMC. The electronic docket indicates that Plaintiff never served a complaint on MMC. Thus, the Court will order Plaintiff to show cause why the complaint should not be dismissed with respect to MMC.

IV

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment [Dkt. # 51] is **GRANTED** in part. Plaintiff has established the liability of Defendant DLHC pursuant to Mich. Comp. Laws § 600.2947(b).

It is further **ORDERED** that Defendant PPR's motion for summary judgment [Dkt. # 46] is **GRANTED**. Plaintiff's complaint is **DISMISSED WITH PREJUDICE** with respect to Defendant PPR.

It is further **ORDERED** that Defendant DLHC's motion for summary judgment [Dkt. # 34] is **GRANTED** with respect to the breach of implied warranty claim under section 600.2947(a) and the negligence claim, and **DENIED** with respect to the express warranty claim under section 600.2947(b).

It is further **ORDERED** that Plaintiff's motion for an extension of time [Dkt. # 42] is **GRANTED**.  *See* E.D. Mich. LR 7.1.

It is further **ORDERED** that Plaintiff will show cause in writing on or before **January 26, 2009** why the complaint should not be dismissed with respect to MMC Enterprises for lack of service.  *See* Fed R. Civ. P. 4(m).

                                                                s/Thomas L. Ludington
                                                                THOMAS L. LUDINGTON
                                                                United States District Judge

Dated: January 16, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 16, 2009.

                                        s/Tracy A. Jacobs
                                        TRACY A. JACOBS